## UNITED STATES BANKRUPTCY COURT
### Northern District of California

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No.: 19-30064 |
| | ) | R.S. No.: GB-1 |
| CYNTHIA ANN SMITH | ) | Hearing Date: August 1, 2019 |
| | ) | Time:1: 00 p.m. |
| Debtor(s) | ) | |
| _____ | ) | |

### Relief From Stay Cover Sheet

Instructions: Complete caption and Section A for all motions. Complete Section B for mobile homes, motor vehicles, and personal property. Complete Section C for real property. Utilize Section C as necessary. If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)  Date Petition Filed: 01/19/2019          Chapter: 11
     Prior hearings on this obligation: None.   Last Day to File §523/§727 Complaints: 04/29/2019

(B)  Description of personal property collateral (e.g. 1983 Ford Taurus):

     Secured Creditor  [   ] or lessor [   ]
     Fair market value: $_____     Source of value: _____
     Contract Balance: $_____      Pre-Petition Default: $_____
     Monthly Payment: $_____                 No. of months: _____
     Insurance Advance: $_____    Post-Petition Default: $_____
                                                      No. of months: _____

(C)  Description of real property collateral (e.g. Single family residence, Oakland, CA): Single Family Residence located at 1539 Laurel Place, Menlo Park, CA 94025.

     Fair market value: $ 2,500,000.00   Source of value: Schedule A    If appraisal, date: _____

     Moving Party's position (first trust deed, second, abstract, etc.): First Deed of Trust

     Approx. Bal. $1,323,384.39              Pre-Petition Default: $ 321,287.99
     As of (date):    05/31/2019                  No. of months:    64
     Mo. payment: $ 5,523.76                 Post-Petition Default: $ 24,107.54
     Notice of Default (date):   10/8/2017          No. of months:   5
     Notice of Trustee's Sale:   06/15/2016   Advances Senior Liens: $ _____

     Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.):

| Position | Amount | Mo. Payment | Defaults |
|---|---|---|---|
| 1st Trust Deed:  Movant | $1,302,376.32 | $5,523.76 | $345,395.53 |
| 2nd Trust Deed: _____ | $ | $ | $ |
|     See Schedule D filed herewith         : | | | |
| (Total) | $2,167,946.29 | $ | $ |

Other pertinent information: Debtor failed to submit loss mitigation package and was issued a denial/cancellation as a result.

Dated:  07/11/2019

                                          _____/s/ Kristin A. Zilberstein_____
                                                      Signature

                                          _____Kristin A. Zilberstein_____
                                                  Print or Type Name

                                  Attorney for  Movant

1   Kristin A. Zilberstein, Esq. (SBN: 200041)
    L. Bryant Jaquez, Esq., (SBN: 252125)
2   GHIDOTTI | BERGER LLP
3   1920 Old Tustin Ave.
    Santa Ana, CA 92705
4   Ph:  (949) 427-2010
    Fax: (949) 427-2732
5   kzilberstein@ghidottiberger.com

6
    Attorney for Movant,
7   U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust

8

9                   UNITED STATES BANKRUPTCY COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12
    In Re:                              )   CASE NO.: 19-30064
13                                      )
14  CYNTHIA ANN SMITH,                  )   CHAPTER 11
                                        )
15       Debtor.                        )   RS No.: GB-1
                                        )
16                                      )
                                        )   **NOTICE OF MOTION FOR**
17                                      )   **RELIEF FROM AUTOMATIC**
                                        )   **STAY**
18                                      )
19                                      )   Date:   August 1, 2019
                                        )   Time:   1:00 p.m.
20                                      )   Ctrm:   19, 16th floor
                                        )   Place:  450 Golden Gate Avenue,
21                                      )           San Francisco, CA 94102
22                                      )
                                        )   Judge: Hannah L. Blumenstiel
23                                      )
                                        )
24                                      )
25                                      )

26       To the Debtors, Debtors' Counsel, and the Chapter 13 Trustee:

27       **PLEASE TAKE NOTICE** that on <u>August 1, 2019</u>, at 1:00 p.m., or as soon thereafter

28  as the matter can be heard before the Honorable Hannah L. Blumenstiel of the above-entitled

                                         1
                      NOTICE OF MOTION FOR RELIEF FROM STAY

court located at 450 Golden Gate Avenue, San Francisco, CA 94102, movant, U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust ("**Movant**"), will move this Court for an order granting relief from the automatic stay relative to Movant's interest in the real property commonly known as 1539 Laurel Place, Menlo Park, CA 94025, and more fully described in the Motion herein.

**PLEASE TAKE FURTHER NOTICE** that Respondent must appear personally or by counsel at the above-captioned hearing and may file responsive pleadings, points and authorities and declarations. If Respondent fails to appear, default may be entered.

Dated: __07/11/2019____                    GHIDOTTI | BERGER LLP


                                           /s/ Kristin A. Zilberstein____
                                           Kristin Zilberstein, Esq.
                                           Attorney for Movant

Case: 19-30064    Doc# 78    Filed: 07/12/19    Entered: 07/12/19 14:57:47    Page 3 of 56

1  Kristin A. Zilberstein, Esq. (SBN: 200041)
   L. Bryant Jaquez, Esq., (SBN: 252125)
2  GHIDOTTI | BERGER LLP
3  1920 Old Tustin Ave.
   Santa Ana, CA 92705
4  Ph: (949) 427-2010
   Fax: (949) 427-2732
5  kzilberstein@ghidottiberger.com
6
   Attorney for Movant,
7  U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust
8
9              UNITED STATES BANKRUPTCY COURT
10             NORTHERN DISTRICT OF CALIFORNIA
11                SAN FRANCISCO DIVISION
12
13 In Re:                          )  CASE NO.: 19-30064
                                   )
14 CYNTHIA ANN SMITH,              )  CHAPTER 11
                                   )
15      Debtor.                    )  RS No.: GB-1
                                   )
16                                 )
                                   )  **MEMORANDUM OF POINTS
17                                 )  AND AUTHORITIES IN
                                   )  SUPPORT OF MOTION FOR
18                                 )  RELIEF FROM AUTOMATIC
                                   )  STAY**
19                                 )
                                   )
20                                 )  Date:  August 1, 2019
                                   )  Time:  1:00 p.m.
21                                 )  Ctrm:  19, 16th floor
                                   )  Place: 450 Golden Gate Avenue,
22                                 )         San Francisco, CA 94102
                                   )
23                                 )
                                   )  Judge: Hannah L. Blumenstiel
24                                 )
                                   )
25 _____)
26
27 TO ALL PARTIES IN INTEREST AND TO THEIR ATTORNEYS OF RECORD:
28
        U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust, its

successors and/or assignees, ("Movant"), by and through its undersigned attorney, moves this

1

Case: 19-30064    Doc# 78    Filed: 07/12/19    Entered: 07/12/19 14:57:47    Page 4 of 56
Motion for Relief Memorandum of Points and Authorities

Court for termination of all stays and injunctions, pursuant to 11 U.S.C. §362(d) and 105 and Federal Rules of Bankruptcy Procedure 4001 and 9014 and regarding the real property commonly known as 1539 Laurel Place, Menlo Park, CA 94025, ("Property" herein).

The relief requested in this Motion is proper for all of the reasons set forth in the Memorandum of Points and Authorities and incorporated herein by this reference.

On or about January 19, 2019, Debtor filed a Voluntary Petition under Chapter 11 of the Bankrutpcy Code. Prusuant to 11 U.S.C. §362, the Petition stays the commencement or continuantion of any proceedings against the Debtor or any act to obtain possession of any property of the Debtor or to enforce any lien against any property of the Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §1334. The filing of this Motion commences a contested matter within the meaning of Bankruptcy Rule 9014.

Pursuant to 11 U.S.C. §362(d)(1), Movant is entitled to relief from the automatic stay to enforce its lien for cause, including lack of adequate protection of any interest in the Property. Movant alleges that post-petition payments are in arrears. Attached is a Declaration, which is incorporated herein by this reference, containing the information required by Local Bankruptcy Rule 4001-1(a). Movant is not receiving regular monthly post-petition payments. Debtor is currently post-petition due for February 1, 2019.

As of June 20, 2019, the amount required to fully reinstate Debtor's loan post-petition si approximately

| | | | | | |
|---|---|---|---|---|---|
| Monthly payments: | 5 | at | $5,523.76 | $ | 22,095.04 |
| Late charges | | | | $ | 981.50 |
| Bankruptcy Attorney Fee: | | | | $ | 850.00 |
| Bankruptcy Filing Fee: | | | | $ | 181.00 |
| **Total Delinquencies:** | | | | **$** | **24,107.54** |

The sums set forth in this motion do not include any late charges, escrow advances, or other fees and charges that might otherwise be included in the event that a payoff is requested or provided.

The next scheduled monthly payment of $5,523.76 is due July 1, 2019, and continuing each month thereafter. However, this amount may be subject to change pursuant to the terms of the applicable loan documents.

Likewise, pursuant to 11 U.S.C. Section 362(d)(2), Movant is entitled to relief from the automatic stay to enforce its lien as there appears to be no/insufficient equity with respect to the subject Property and the Property is not necessary for an effective reorganization.

Movant alleges the value of the Property to be approximately $2,500,000.00 based upon Schedule A-Real Property of the Debtor's Schedules. Attached hereto as **Exhibit "4"** is a copy of Schedule A-Real Property of the Debtor's Schedules. Movant requests that the Court take Judicial Notice, pursuant to Federal Rules of Evidence Rule 201, of the attached Exhibit as to the issue of value of the subject Property.

Based upon the liens and amounts listed on Schedule D-Creditors Holding Secured Claims of the Debtor's Schedules, the total amount of liens encumbering the subject Property amount to $1,876,514.88. Attached hereto as **Exhibit "5"** is a copy of Schedule D-Creditors Holding Secured Claims of the Debtor's Schedules. Movant requests that the Court take Judicial Notice, pursuant to Federal Rules of Evidence Rule 201, of the attached Exhibit as to the issue of the amount of liens encumbering subject Property. However, Movant's lien is understated in the schedules by $207,575.12 as evidenced by proof of claim #7-1 filed on May 20, 2019. Likewise, the lien of WVJP 2017-1, LP is understated in the schedules by $83,856.29 as evidenced by proof of fclaim #8-1 filed on May 28, 2019. Those increased amounts alone bring the total liens against the Property to $2,167,946.29. When taking into account costs of sale for the Property and captical gains taxes, any possible equity in the Property is eroded.

///

///

///

///

Motion for Relief Memorandum of Points and Authorities

There appears to be no/insufficient equity with respect to the subject Property, that Movant is not adequately protected, that the Property is not necessary for an effective reorganization, and that cause exists, in that Movant is not receiving its regular monthly payments, and/or that it would be unfair and inequitable to delay Movant in the foreclosure of Movant's interest in the subject Property. 11 U.S.C. Section 362(d).

Dated:   July 11, 2019           GHIDOTTI | BERGER LLP


*/s/ Kristin A. Zilberstein*
Kristin Zilberstein, Esq.
Attorney for Movant

Motion for Relief Memorandum of Points and Authorities

1  Kristin A. Zilberstein, Esq. (SBN: 200041)
   L. Bryant Jaquez, Esq., (SBN: 252125)
2  GHIDOTTI | BERGER LLP
3  1920 Old Tustin Ave.
   Santa Ana, CA 92705
4  Ph: (949) 427-2010
   Fax: (949) 427-2732
5  kzilberstein@ghidottiberger.com

6  Attorney for Movant,
7  U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust

8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  In Re:                          )   CASE NO.: 19-30064
                                    )
14  CYNTHIA ANN SMITH               )   CHAPTER 11
                                    )
15      Debtor.                     )   RS No.: GB-1
                                    )
16                                  )   **DECLARATION IN SUPPORT OF**
                                    )   **MOTION FOR RELIEF FROM**
17                                  )   **AUTOMATIC STAY**
                                    )
18                                  )
                                    )   Date:   August 1, 2019
19                                  )   Time:   1:00 p.m.
                                    )   Ctrm:   19, 16th floor
20                                  )   Place:  450 Golden Gate Avenue,
                                    )           San Francisco, CA 94102
21                                  )
                                    )
22                                  )   Judge: Hannah L. Blumenstiel
                                    )
23                                  )
                                    )
24                                  )
                                    )
25  _____)
                                    )
26      I, Megan Lynch, declarte and state as follows:

27      1.      I am over the age of eighteen years and not a party to this action.  The facts set

28  for the below are known to me personally based upon the review of the business records and I

have first-hand knowledge of them. If called as a witness, I could and would testify competently under oath to such facts.

2.     I am employed as a bankruptcy asset manager with SN Servicing Corporation ("Servicer") who services the Subject Loan at issue herein (as defined below) on behalf of the Movant, U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust ("Movant"). In the regular performance of my job functions, I am familiar with and have access to the business records maintained by Servicer for the purpose of servicing mortgage loans on behalf of Movant. These records, which include date compilations, electronically imaged documents, and others, are made at or near the time of date by, or from information provided by persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Servicer. It is the regular practice of Servicer's mortgage servicing business to make and/or maintain these records including the records of prior servicers of the loans now serviced by Servicer, including the Subject Loan at issue in this action. Servicer relies upon the accuracy of those records in conducting its business of servicing loans, including the Subject Loan at issue in this action.

3.     I regularly verify Servicer's records, loan histories, correspondence, and communication histories. This entails reviewing, becoming familiar with, and participating in the review of documents related to loan accounts for loans serviced by Servicer. From my employment for Servicer, I am familiar with its business operations and with the services that Servicer offers to its customers.

4.     I have personally reviewed Servicer's records as they related to the Subject Loan obligation referred to herein, and as to the following facts, I know them to be true of own knowledge or I have gained knowledge of them from my review of Servicer's business records. If called upon to testify, I could and would competently testify to the following under oath.

5.     The subject real property securing the Deed of Trust loan is commonly known as 1539 Laurel Place, Menlo Park, CA 94025, and legall described as set forth therein. A true and correct copy of the Deed of Trust is attached to the Motion as **Exhibit "1"**.

Motion for Relief Declaration

6.      Furthermore, Movant is the holder and in possession of the original Promissory Note dated December 29, 2006 in the principal amount of $1,000,000.00 which is Secured by the Deed of Trust of the same date.  A true and correct copy of the Note is attached to the Motion as **Exhibit "2"**.

7.      The Deed of Trust was assigned to Movant.  A true and correct copy of the Assignment is attached to the Motion as **Exhibit "3"**.

8.      The Debtor filed this subject bankruptcy petition January 19, 2019.

9.      Pursuant to the terms of the Note and/or Deed of Trust, a payment received is applied to the account and credited to the next due payment.  For example, a payment received in December will be applied to the November payment if no payment had been received in November.

10.      With respect to Movant's Deed of Trust as of June 20, 2019, the following is now due:

| | | | | | |
|---|---|---|---|---|---|
| Monthly payments: | 5 | at | $5,523.76 | $ | 22,095.04 |
| Late charges | | | | $ | 981.50 |
| Bankruptcy Attorney Fee: | | | | $ | 850.00 |
| Bankruptcy Filing Fee: | | | | $ | 181.00 |
| **Total Delinquencies:** | | | | **$** | **24,107.54** |

11.      The sums set forth in this motion do not include any late charges, escrow advances, or other fees and charges that might otherwise be included in the event that a payoff is requested or provided.

///
///
///
///
///
///
///

Motion for Relief Declaration

1      12.    The next scheduled monthly payment of $5,523.76 is due July 1, 2019, and

2 continuing each month thereafter. However, this amount may be subject to change pursuant to

3 the terms of the applicable loan documents.Late charges will accrue if the payments are not

4 recived by the 15th of the month.

5      I declare under penalty of perjury under the laws of the Unted States of America that

6 the foregoing is true and correct.

7

8 Executed on __07/05/19__ (Date) __Eureka__ (City), __CA__ (State)

9

10

11

12                            Signature

13

14 __Megan Lynch__
                        Print Name

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Motion for Relief Declaration

# Exhibit "1"

11:26am 01/16/07 DT  Fee: 58.00
Count of pages 18
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

Recording Requested By:
PEOPLE'S CHOICE HOME LOAN,
INC.
Return To:
PEOPLE'S CHOICE HOME LOAN.
INC.
7515 IRVINE CENTER DR.
IRVINE. CA  92618


Prepared By:
People's Choice Home Loan,
Inc. 7515 Irvine Center
Drive, Irvine, CA  92618

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated December 29. 2006                    ,
together with all Riders to this document.
(B) "Borrower" is CYNTHIA A. SMITH. AN UNMARRIED WOMAN




Borrower's address is 1539 LAUREL PL, MENLO PARK          , CA 94025
                                        . Borrower is the trustor under this Security Instrument.
(C) "Lender" is PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

Lender is a CORPORATION
organized and existing under the laws of WYOMING

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

VMP -6A(CA) (0207)
Page 1 of 15                  Initials: CAS
   VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA 92618

(D) "Trustee" is F.C.I., A California Corporation, 8101 Kaiser Blvd., Suite #360 Anaheim Hills, CA 92808

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated December 29, 2006
The Note states that Borrower owes Lender ONE MILLION AND 00/100
Dollars
(U.S. $1,000,000.00 ╱ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2037 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
　　　　　　COUNTY　　　　　　　　　　　of　　　　　　　　　　SAN MATEO　　　　　　　　:
　　　　　　[Type of Recording Jurisdiction]　　　　　　　　　　　　[Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
'A'

Parcel ID Number:　　　　　　　　　　　　　　　　　which currently has the address of
1539 LAUREL PL　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　[Street]
menlo park　　　　　　　　　　　　　　　　　　[City], California 94025　　　　　[Zip Code]
("Property Address"):

　　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

　　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

GA(CA) (0207)　　　　　　　　　　　Page 3 of 15　　　　　Initials: _CAS_　　　Form 3005　1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

10415179

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)          Page 7 of 15          Initials: CAS          Form 3005  1/01

Case 19-30064    Claim 7-1    Filed 05/20/19    Desc Main Document          Page 18 of 55
Case: 19-30064    Doc# 78    Filed: 07/12/19    Entered: 07/12/19 14:57:47    Page 19 of 56

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _CAS_

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



-6A(CA) (0207)          Page 12 of 15          Initials:          Form 3006   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _CAS_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Cynthia A Smith_____ (Seal)
                                          CYNTHIA A SMITH                  -Borrower

_____          _____ (Seal)
                                                                          -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                 -Borrower

**State of California**
**County of** CALIFORNIA                              } ss.

On DECEMBER 29, 2006         before me,   LEE HARRISON, NOTARY PUBLIC

                                                        personally appeared

CYNTHIA A SMITH

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                          _Lee Harrison_  (Seal)

LEE HARRISON
COMM. #1604079
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. Sept. 3, 2009

Initials: CAS

VMP -6A(CA) (0207)              Page 15 of 15                        Form 3005   1/01

# Exhibit "2"

# BALLOON NOTE
### (Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT M ATURITY. YOU M UST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO M AKE PAYM ENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT M ATURITY, YOU MAY HAVE TO PAY SOM E OR ALL OF THE CLOSING COSTS NORM ALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| 12/29/2006 | ROSEVILLE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

1539 LAUREL PL, menlo park, CALIFORNIA 94025
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,000,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PEOPLE'S CHOICE HOME LOAN, INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on March 1st,2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on February 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.

### (B) AMOUNT OF MY INITIAL MONTHLY PAYMENTS
My monthly payment will be in the amount of U.S. $6,396.72 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If within Thirty-six (36) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CYNTHIA A SMITH          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

[Sign Original Only]

1BNOTE3                          Page 3 of 3                          08/06

Case 19-30064   Claim 7-1   Filed 05/20/19   Desc Main Document   Page 10 of 55
Case: 19-30064   Doc# 78   Filed: 07/12/19   Entered: 07/12/19 14:57:47   Page 31 of 56

PAY TO THE ORDER OF

WITHOUT RECOURSE
PEOPLE'S CHOICE HOME LOAN, INC
A Wyoming Corporation

By

DANA LANTRY

Title: Asst. Vice President

# Exhibit "3"

9:56 am 04/13/12 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Recording requested by:

When recorded mail to:

Saxon Mortgage Services, Inc.
3701 Regent Blvd
Irving, TX 75063

_____

Space above this line for recorders use

## Assignment of Deed of Trust

For value received, the undersigned hereby grants, assigns, and transfers to

FV-I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated 12/29/2006 executed by CYNTHIA A. SMITH , AN UNMARRIED WOMAN, as Trustor(s) to F.C.I, A CALIFORNIA CORPORATION, as Trustee and recorded as Instrument No. 2007-006673, on 1/16/2007, of Official Records in the office of the County Recorder of SAN MATEO County, CA, that secures the underlying promissory note.

Dated:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION, ITS SUCCESSORS AND ASSIGNS

By: _____

State of: _____
County of: _____ } ss.

On _____ before me, _____ a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _NEW YORK_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    (Seal)

LISA J. COSTA
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
My Commission Expires March 20, 20__

2:05 pm 09/09/16 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Requested and Prepared by:
Law Office of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA, 92606

When Recorded Mail To:
Specialized Loan Servicing, LLC
8742 Lucent Blvd.
Highlands Ranch, CO 80129

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned hereby grants, assigns, and transfers to:

**Towd Point Master Funding Trust 2014-NP1, U.S. Bank Trust National Association, as Delaware Trustee**

All beneficial interest under that certain Deed of Trust dated: 12/29/2006 executed by CYNTHIA A. SMITH, AN UNMARRIED WOMAN, as Trustor(s), and PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION, as Lender, Mortgage Electronic Registration Systems, Inc., as Beneficiary, to F.C.I., A CALIFORNIA CORPORATION, as Trustee, and recorded on 1/16/2007 as Instrument Number 2007-006673    of Official Records, in the office of the County Recorder of San Mateo County, California and also all rights accrued or to accrue under said Deed of Trust. Property Address: 1539 LAUREL PLACE, MENLO PARK, CALIFORNIA 94025

Dated: _March 23, 2015_

By:  FV-I, Inc. in trust for Morgan Stanley Mortgage
Capital Holdings LLC

_Aaron Saunders_
Authorized Signatory

State of _Texas_

County of _COLLIN_

On _March 23, 2015_ before me, _Nicole Roseline Turner_ Notary Public, personally appeared _Aaron Saunders_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _N Turner_ (Seal)



NICOLE ROSELINE TURNER
Notary Public, State of Texas
My Commission Expires
June 10, 2017

10:58 am 10/31/17 AT Fee: 24.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor County Clerk Recorder

**PREPARED BY:**
TOWD POINT MASTER FUNDING TRUST
2014-NP1, U.S. BANK TRUST NATIONAL
ASSOCIATION, AS DELAWARE TRUSTEE
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10022
**RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:**
Westcor Land Title Insurance Co
600 W Germantown Ave, Suite 450
Plymouth Meeting, PA 19462

## ASSIGNMENT OF DEED OF TRUST

**FOR VALUE RECEIVED**, the undersigned, **TOWD POINT MASTER FUNDING TRUST 2014-NP1, U.S. BANK TRUST NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE**, located at C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **TOWD POINT MASTER FUNDING TRUST 2017-NP1**, located at: C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10022, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **DEED OF TRUST**, dated 12/29/2006 and executed by **CYNTHIA A SMITH, AN UNMARRIED WOMAN**, borrower(s) to: **F.C.I., A CALIFORNIA CORPORATION** as original trustee and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION**, as original lender, and certain instrument recorded 01/16/2007, in Instrument 2007 006673, in the Official Records of SAN MATEO County, the State of California, given to secure a certain Promissory Note in the amount of $1,000,000.00 covering the property located at 1539 LAUREL PL, MENLO PARK, CA 94025.
Legal Description:
See Exhibit A, Attached.

**TOGETHER** with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

Case: 19-30064    Doc# 78    Filed: 07/12/19    Entered: 07/12/19 14:57:47    Page 36 of 56

Dated: October __26__, 2017

ASSIGNOR: TOWD POINT MASTER FUNDING TRUST 2014-NP1, U.S. BANK TRUST NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE

BY: FirstKey Mortgage, LLC, A Florida Limited Liability Company, its attorney-in-fact*

By: _____

Name: Jordan Epstein

Title: Authorized Signatory

*Power of Attorney Recorded in Westchester County, NY in

State of: NEW YORK
County of: NEW YORK

Before me, __Maura C. Toglia__, duly commissioned Notary Public, on this day personally appeared **Jordan Epstein, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability Company, attorney-in-fact for TOWD POINT MASTER FUNDING TRUST 2014-NP1, U.S. BANK TRUST NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE,** known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this __26__ day of October, 2017.

_____
Notary Public's Signature

Printed Name: MAURA C. TOGLIA
Notary Public, State of New York
Lic. #01TO6044869
My Commission Expires Qualified in Westchester County
My Commission Expires July 17, 20__

Property Address: 1539 LAUREL PL, MENLO PARK, CA 94025

## Exhibit A: Legal Description

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA: LOT 11, AS DESIGNATED ON THE MAP ENTITLED, LAUREL MANOR, MELO PARK, SAN MATEO COUNTY, CALIFORNIA, WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON SEPTEMBER 28, 1950 IN BOOK 32 OF MAPS AT PAGE 19.

4:11 pm 06/26/18 AT Fee: 98.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

**PREPARED BY:**
Towd Point Master Funding Trust 2017-NP1
C/O FirstKey Mortgage, LLC, 900 Third Avenue,
5th Floor, New York, NY 10028
**RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:**
    **Meridian Asset Services**
    **Attn: Doc Intake**
    **3201 34th Street South, Suite 310**
    **St. Petersburg, FL 33711**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, **Towd Point Master Funding Trust 2017-NP1,** located at C/O FirstKey Mortgage, LLC, 900 Third Avenue, 5th Floor, New York, NY 10028, ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **MTGLQ INVESTORS, L.P.,** located at: 6011 Connection Drive, Irving, TX 75039, ("ASSIGNEE/GRANTEE"), all beneficial interest under that certain **DEED OF TRUST,** dated **12/29/2006** and executed by **CYNTHIA A SMITH, AN UNMARRIED WOMAN,** borrower(s) to: F.C.I., A CALIFORNIA CORPORATION as original trustee and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION,** as original lender, and certain instrument recorded **01/16/2007,** in **Instrument 2007 006673,** in the Official Records of **SAN MATEO** County, the State of **California,** given to secure a certain Promissory Note in the amount of **$1,000,000.00** covering the property located at **1539 LAUREL PL, MENLO PARK, CA 94025.**
**Legal Description:**
See Exhibit A, Attached.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

Dated: May **25**, 2018

**ASSIGNOR: Towd Point Master Funding Trust 2017-NP1**

BY: FirstKey Mortgage, LLC, A Florida Limited Liability
Company, Not In Its Individual Capacity But Solely As
Administrator

By: _____

Name:  Jordan Epstein

Title:  Authorized Signatory


State of:  NEW YORK
County of: NEW YORK

Before me, ___**Jose Chavez**___, duly commissioned Notary Public, on this day personally appeared **Jordan Epstein, Authorized Signatory of FirstKey Mortgage, LLC, A Florida Limited Liability Company, Not In Its Individual Capacity But Solely As Administrator of Towd Point Master Funding Trust 2017-NP1,** known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed in his/her authorized capacity.

Given under my hand and seal of office this **25** day of May, 2018.

_____
Notary Public's Signature

Printed Name: _____

My Commission Expires: _____

Property Address: 1539 LAUREL PL, MENLO PARK, CA 94025

JOSE CHAVEZ
Notary Public, State of New York
Reg. No. 01CH6139294
Qualified in Westchester County
My Commission Expires Jan. 03, 20**22**

## Exhibit A: Legal Description

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA:    LOT 11, AS DESIGNATED ON THE MAP ENTITLED, LAUREL MANOR, MELO PARK, SAN MATEO COUNTY, CALIFORNIA, WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON SEPTEMBER 28, 1950 IN BOOK 32 OF MAPS AT PAGE 19.

Recording Requested By:
SERVICELINK

Prepared By: Audrey B Trumble
3001 Hackberry Rd
Irving, TX 75063
855-369-2410
When recorded mail to:

2:33 pm 01/25/19 AT Fee: 95.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Property Address:
1539 LAUREL PL
MENLO PARK, CA 94025
CA0-ADT 37253809    11/28/2018 BALBECWLS

*This space for Recorder's use*

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **2001 Ross Avenue, Suite 2800, Dallas, TX 75201** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST** whose address is **7114 E. Stetson Dr., Suite 250, Scottsdale, AZ 85251** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| Original Borrower(s): | CYNTHIA A. SMITH, AN UNMARRIED WOMAN |
| Original Trustee: | F.C.I., A CALIFORNIA CORPORATION |
| Date of Deed of Trust: | 12/29/2006 |
| Original Loan Amount: | $1,000,000.00 |

Recorded in San Mateo County, CA on: 1/16/2007, book N/A, page N/A and instrument number 2007-006673

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
1/8/2019

MTGLQ INVESTORS, L.P.

By:

Andrea Rhinehardt, Vice President

State of **TX**, County of **Dallas**

On  |8|2019 , before me, **Natalie Flowers** , a Notary Public, personally appeared **Andrea Rhinehardt, Vice President** of **MTGLQ INVESTORS, L.P.** personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: **Natalie Flowers**
My Commission Expires: 11/29/2022



Natalie Flowers
My Commission Expires
11/29/2022
ID No 124227802

# Exhibit "4"

**Fill in this information to identify your case and this filing:**

| Debtor 1 | Cynthia Ann Smith | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA | | |
| Case number | 2019-30064 | | |

■ Check if this is an amended filing

# Official Form 106A/B
# Schedule A/B: Property                                         12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
■ Yes. Where is the property?

### 1.1

**1539 Laurel Place**
Street address, if available, or other description

**Menlo Park     CA     94025-0000**
City            State    ZIP Code

**San Mateo**
County

**What is the property?** Check all that apply
- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an interest in the property?** Check one
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**APN # 061-390-100**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,500,000.00** | **$2,500,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...........................................................=>

| $2,500,000.00 |
|---|

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Official Form 106A/B                          Schedule A/B: Property                                         page 1
Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

Case: 19-30064     Doc# 29     Filed: 03/15/19     Entered: 03/15/19 14:43:13     Page 1 of 9
Case: 19-30064     Doc# 78     Filed: 07/12/19     Entered: 07/12/19 14:57:47     Page 45 of 56

### 3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
■ Yes

| 3.1 | Make: | **Dodge** |
|---|---|---|
| | Model: | **Caravan** |
| | Year: | **2005** |
| | Approximate mileage: | **200,000** |
| | Other information: | |

Who has an interest in the property? Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $500.00 | $500.00 |

### 4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

### 5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.......................................................=>

| | |
|---|---|
| | $500.00 |

**Part 3:** Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

### 6. Household goods and furnishings
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

| Misc. Household items | $517.00 |
|---|---|

### 7. Electronics
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

| 5 TV's, Stereo, printer, computer, ipad | $400.00 |
|---|---|

### 8. Collectibles of value
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
☐ No
■ Yes. Describe.....

| Misc. Art Collection | $200.00 |
|---|---|

| CD collection | $100.00 |
|---|---|

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
    ■ No
    ☐ Yes.  Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes.  Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| Clothing | $250.00 |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| Costume jewelry and furs | $500.00 |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☐ No
    ■ Yes.  Describe.....

| | |
|---|---|
| 2 dogs (Poodles) and 2 cats | $800.00 |

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes.  Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ................................................................

$2,767.00

**Part 4:**  **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ☐ No
    ■ Yes..........................................................................................................

Cash on Hand                                $20.00

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
    ☐ No
    ■ Yes.....................                                Institution name:

| 17.1. | **Checking** | Capital One 360 | $0.00 |
|---|---|---|---|

| 17.2. | **Checking** | BBVA acct;...6136 (A) | $0.89 |
|---|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No
☐ Yes..................     Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

■ No
☐ Yes. Give specific information about them...................
      Name of entity:                    % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
      Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
■ Yes. List each account separately.
      Type of account:           Institution name:

| | **Social Security Benefit up to:** | **$415.65** |
|---|---|---|

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. .....................     Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............     Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............     Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes. Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes. Give specific information about them...

**Money or property owed to you?**

Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

28. **Tax refunds owed to you**
    - ■ No
    - ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    - ■ No
    - ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
    benefits; unpaid loans you made to someone else
    - ■ No
    - ☐ Yes. Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    - ■ No
    - ☐ Yes. Name the insurance company of each policy and list its value.

    Company name:                          Beneficiary:                          Surrender or refund value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
    someone has died.
    - ■ No
    - ☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    - ☐ No
    - ■ Yes. Describe each claim.........

| | |
|---|---|
| **A&B Produce - pending lawsuit personal injury from 2015 (A) car accident** | **$500,000.00** |
| **Awarded Judgment** <br> **owed by Tom Van Horn** | **$29,000.00** |
| **Pending Auto accident claim with San Mateo County Superior Court (A)** <br> **case # CIV538870** | **$500,000.00** |
| **Pending Slip & Fall claim with San Mateo County Superior Court (A)** <br> **Case # 19CIV00438** | **$100,000.00** |

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    - ■ No
    - ☐ Yes. Describe each claim.........

Official Form 106A/B                                    Schedule A/B: Property                                         page 5
Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Case: 19-30064    Doc# 29    Filed: 03/15/19    Entered: 03/15/19 14:43:13    Page 5 of 9
Case: 19-30064    Doc# 78    Filed: 07/12/19    Entered: 07/12/19 14:57:47    Page 49 of 56

35. **Any financial assets you did not already list**
☐ No
■ Yes. Give specific information..

| | |
|---|---|
| Itex barter account | $6,000.00 |

| | |
|---|---|
| Bisx barter account | $6,600.00 |

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**.................................................................................................... | **$1,142,036.54**

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
■ No. Go to Part 6.
☐ Yes.  Go to line 38.

**Part 6:** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
■ No. Go to Part 7.
☐ Yes.  Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
■ No
☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ................................. | **$0.00**

**Part 8:** List the Totals of Each Part of this Form

| | | |
|---|---|---|
| 55. Part 1: Total real estate, line 2 ............................................................................................................ | | $2,500,000.00 |
| 56. Part 2: Total vehicles, line 5 | $500.00 | |
| 57. Part 3: Total personal and household items, line 15 | $2,767.00 | |
| 58. Part 4: Total financial assets, line 36 | $1,142,036.54 | |
| 59. Part 5: Total business-related property, line 45 | $0.00 | |
| 60. Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61. Part 7: Total other property not listed, line 54 | + $0.00 | |
| 62. Total personal property. Add lines 56 through 61... | $1,145,303.54    Copy personal property total | $1,145,303.54 |

63. **Total of all property on Schedule A/B.** Add line 55 + line 62 | $3,645,303.54

# Exhibit "5"

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Cynthia Ann Smith** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA | | |
| Case number (if known) | **2019-30064** | | |

☑ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:** List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim | **Column C**<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1 Rushmore Mortgage**<br>Creditor's Name | Describe the property that secures the claim:<br>**1539 Laurel Place Menlo Park, CA 94025 San Mateo County**<br>**APN # 061-390-100** | **$1,031,804.20** | **$2,500,000.00** | **$0.00** |

P.O. Box 52708
Irvine, CA 92619

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred _____    Last 4 digits of account number    9230

| | | | | |
|---|---|---|---|---|
| **2.2 EDD**<br>Creditor's Name | Describe the property that secures the claim:<br>**1539 Laurel Place Menlo Park, CA 94025 San Mateo County**<br>**APN # 061-390-100** | **$70,000.00** | **$2,500,000.00** | **$0.00** |

**Bankruptcy Group MIC 92E**
PO Box 826880
Sacramento, CA 94280

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☑ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred **2/11/2010**    Last 4 digits of account number _____

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| 2.3 | EDD | | Describe the property that secures the claim: | $5,000.00 | $2,500,000.00 | $0.00 |

Creditor's Name

**Bankruptcy Group MIC 92E**
**PO Box 826880**
**Sacramento, CA 94280**

Number, Street, City, State & Zip Code

**1539 Laurel Park Menlo Park, CA 94025 San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred    **8/27/2010**      Last 4 digits of account number

---

| 2.4 | Florist Transworld Delivery, Inc. | | Describe the property that secures the claim: | $86,280.00 | $2,500,000.00 | $0.00 |

Creditor's Name

**c/o Gaba Law Corp.**
**23141 Verdugo Drive**
**Suite 205**
**Laguna Hills, CA 92653**

Number, Street, City, State & Zip Code

**1539 Laurel Place Menlo Park, CA 94025 San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred    **3/14/2017**      Last 4 digits of account number

---

| 2.5 | Franchise Tax Board | | Describe the property that secures the claim: | $4,000.00 | $2,500,000.00 | $0.00 |

Creditor's Name

**Bankruptcy Section MS A340**
**PO Box 2952**
**Sacramento, CA 95812-2952**

Number, Street, City, State & Zip Code

**1539 Laurel Place Menlo Park, CA 94025 San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred    **2/1/2011**      Last 4 digits of account number

---

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Case: 19-30064    Doc# 30    Filed: 03/15/19    Entered: 03/15/19 14:51:38    Page 2 of 10

Case: 19-30064    Doc# 78    Filed: 07/12/19    Entered: 07/12/19 14:57:47    Page 53 of 56

| 2.6 | **Grant & Weber, A corp.** | Describe the property that secures the claim: | **$9,110.00** | **$2,500,000.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**1539 Laurel Place Menlo Park, CA 94025  San Mateo County APN # 061-390-100**

**26575 W. Agoura Road Calabasas, CA 91302**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred**  **8/14/2011**    Last 4 digits of account number _____

---

| 2.7 | **Holly Millar** | Describe the property that secures the claim: | **$222,000.00** | **$2,500,000.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**1539 Laurel Place Menlo Park, CA 94025  San Mateo County APN # 061-390-100**

**1740 Broadway # 701 San Francisco, CA 94109**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred**  **2/24/2010**    Last 4 digits of account number _____

---

| 2.8 | **Internal Revenue Service** | Describe the property that secures the claim: | **$25,000.00** | **$2,500,000.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**1539 Laurel Place Menlo Park, CA 94025  San Mateo County APN # 061-390-100**

**PO Box 7346 Philadelphia, PA 19101-7346**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred**  **12/16/2009**    Last 4 digits of account number _____

---

| 2.9 | **Internal Revenue Service** | Describe the property that secures the claim: | **$113,000.00** | **$2,500,000.00** | **$0.00** |
|---|---|---|---|---|---|

---

Creditor's Name

PO Box 7346
Philadelphia, PA
19101-7346

Number, Street, City, State & Zip Code

**1539 Laurel Place Menlo Park, CA 94025  San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred   **2/19/2015**            Last 4 digits of account number _____

---

| 2.1 0 | **Nelida Cortez Contreras** | Describe the property that secures the claim: | $48,690.00 | $2,500,000.00 | $0.00 |

Creditor's Name

132 Alameda De Las
Pulgas
Redwood City, CA 94062

Number, Street, City, State & Zip Code

**1539 Laurel Place Menlo Park, CA 94025  San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred   **4/6/2015**            Last 4 digits of account number _____

---

| 2.1 1 | **Reyna Vasquez** | Describe the property that secures the claim: | $34,757.06 | $2,500,000.00 | $0.00 |

Creditor's Name
c/o Stanford Community
Law Clinic
2117 University Ave,
Suite A
Palo Alto, CA 94303

Number, Street, City, State & Zip Code

**1539 Laurel Place Menlo Park, CA 94025  San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred   **11/15/2013**            Last 4 digits of account number _____

---

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

| 2.1 2 | **Western States Land Corp.** | | | | $38,650.00 | $2,500,000.00 | $0.00 |
|---|---|---|---|---|---|---|---|

Creditor's Name

**c/o Mark J. Solomon, Esq.**
**702 Marshall Street**
**Redwood City, CA 94063**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred    **8/16/2012**    Last 4 digits of account number _____

**Describe the property that secures the claim:**

**1539 Laurel Place Menlo Park, CA 94025 San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ■ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

| 2.1 3 | **Wolverine Ventures Management, LLC** | | | | $188,223.62 | $2,500,000.00 | $0.00 |
|---|---|---|---|---|---|---|---|

Creditor's Name

**c/o Kevin S. Eikenberry, Esq.**
**1470 Maria Lane # 440**
**Point Reyes Station, CA 94956**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred    **2/16/2007**    Last 4 digits of account number _____

**Describe the property that secures the claim:**

**1539 Laurel Place Menlo Park, CA 94025 San Mateo County APN # 061-390-100**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ■ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

**Add the dollar value of your entries in Column A on this page. Write that number here:**    $1,876,514.88

**If this is the last page of your form, add the dollar value totals from all pages. Write that number here:**    $1,876,514.88

**Part 2:** **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.